Argued January 11, decided January 31, 1911

## RUHNKE *v*. AUBERT.

[113 Pac. 38.]

WATERS AND WATER COURSES—WATER RIGHTS.

1. The right to take or divert water from another's land is an easement.

EASEMENTS—CONSTRUCTION.

2. In determining whether an easement is appurtenant or in gross, courts must consider the terms of the grant, the nature of the right, and the surrounding circumstances, giving effect as far as possible to the legally ascertained intention of the parties, but favoring always a construction as an easement appurtenant.

EASEMENTS—CONSTRUCTION.

3. The rule governing construction of deeds that the rights of the parties must be determined from the language applies to easements, subject to the modification that surrounding circumstances may be considered to ascertain the parties' intention.

EASEMENTS—RESERVATIONS—EFFECT.

4. In a grant of land for an irrigation ditch, a reservation of right in the grantors to put crossings over the ditch and use water therefrom carved a new estate out of that granted, operating as a regrant or reconveyance of the estate reserved.

Deeds—Fee-Simple Estates—"Heirs."

5. The term "heirs" is not necessary to convey an estate in fee simple.

Deeds—Fee-Simple Estates.

6. Under Section 7103, L. O. L., a conveyance is deemed to be of a fee-simple estate, unless a contrary intent appears in express terms, or is necessarily implied by the grant.

Easements—Reservations—Construction.

7. An indefinite reservation in the grant of an easement may be construed with reference to the acts of the parties in regard to it.

Waters and Water Courses—Construction—Nature of Estate.

8. A grant of land for an irrigation ditch, subject to the grantor's right to put crossings over the ditch, and to use water therefrom, conveyed and reserved inheritable estates; the reservation being appurtenant to the land retained by the grantors.

Evidence—Testimony Affecting Easements—Admissibility.

9. Testimony is admissible to explain a reservation in the grant of an easement, where it is indefinite as to the extent of the right retained.

Waters and Water Courses—Construction—Water Rights.

10. A reservation in a grant of land for an irrigation ditch of the right to use water therefrom, to the extent of grantors' "interest," entitled the grantors to flow through the ditch and to divert therefrom on land retained a quantity of water represented by stock in a water supply company, but the amount could not be increased by subsequent purchase of other stock.

Waters and Water Courses—Construction—Water Rights.

11. A deed of land by one having the right to divert water as a stockholder in a water supply company, including 28⅔ "inches of water stock," gave the grantee the right to divert 28⅔ inches of water from a ditch from which the grantor had a right to take water as an easement appurtenant to land, including that conveyed, and gave the grantee the right to use such water anywhere on his land.

From Hood River: William L. Bradshaw, Judge.

Statement by Mr. Justice McBride.

In June, 1903, John Vauthiers was the owner of the S. ¾ of the N. W. ¼ of section 27, township 1 N., range 10 E., in Hood River County. Harvey C. Rush owned the N. ¼ of the same quarter section, and the plaintiffs owned land immediately adjoining it on the north. None of this land could be farmed to advantage without irrigation. The method by which the most of the water for such purpose was obtained was by purchasing shares of stock from the Mt. Hood Water Supply Company, a corporation. The holder of a share of stock was entitled to

divert from the ditch of the corporation approximately
6⅖ inches of water for his own purposes. Vauthiers was
the owner of several shares of this stock; the exact num-
ber not being disclosed by the testimony. On June 26,
1903, Vauthiers and wife executed a conveyance to plain-
tiff Albert Ruhnke, which reads as follows:

"This indenture witnesseth: That J. Vauthiers and
Mary J. Vauthiers, his wife, for and in consideration of
the sum of $1.00 to them in hand paid by Albert Ruhnke,
the receipt whereof is hereby acknowledged, have bar-
gained, sold, and conveyed, and by these presents do bar-
gain, sell, and convey, unto the said Albert Ruhnke, his
heirs and assigns, forever, a strip of land 10 feet wide
across the S. W. ¼ of the N. W. ¼ of section 27, town-
ship 1, North, range 10 East of the Willamette meridian,
for the purpose of building, constructing and maintaining
an irrigation ditch; also the right to maintain a dam in
the creek now upon the said S. W. ¼ of the N. W. ¼ of
said section 27, township 1 North, range 10 East of Wil-
lamette meridian, subject to the right of the grantors to
put crossings over said ditch wherever they may see fit
and use the water therefrom to the extent of their
interest.

To have and to hold the said premises and privilege
unto the said Albert Ruhnke, his heirs and assigns for-
ever.

In witness whereof we have hereunto set our hands and
seals this 26th day of June, 1903.

J. VAUTHIERS.          [SEAL]

MARY J. VAUTHIERS."    [SEAL]

Pursuant to this deed, plaintiffs constructed the ditch
over the land in question, which, in connection with other
rights of way previously purchased, gave them a continu-
ous right of way to their own lands, and ever since then
they have used the ditch for conveying water to their own
land for the purposes of irrigation, and incidentally sell-
ing surplus water to an adjoining landowner. On Decem-
ber 21, 1903, Vauthiers and wife sold lots 5, 6 and 7 of
section 27 to defendant, Aubert, and conveyed it by a

warranty deed, which in terms included appurtenances. In addition to this the granting clause in the deed also contains this language: "Also 27 inches of water stock of the Mt. Hood Water Supply Co., five (5) inches of water, nevertheless, is hereby reserved to the said grantors from a certain spring located about the center of lot seven." The deed also conveyed a fractional share of water stock representing 2 inches of water, and it appeared from the testimony that the number "27" should have been "26⅔." The testimony shows that Vauthiers at the time he made the sale to Aubert showed him the ditch and represented that he had a right to use it for irrigation purposes, and that the land was purchased with a view to using the water flowing through this ditch for the purpose of irrigation. The defendant used the ditch jointly with Vauthiers and plaintiffs, without objection, assisting from time to time in repairing and enlarging it, until 1906, when Vauthiers notified him in writing to cease taking water from the ditch until some arrangement should be made for the payment of the same, which notice was disregarded. In 1907 plaintiffs gave a similar notice and warning, which was disregarded, and they brought this suit to enjoin defendant from taking water from the ditch.

Defendant answered, setting up his deed from Vauthiers, and claiming an easement in the ditch for the amount of water represented by the shares mentioned in Vauthiers' deed to him. The circuit court rendered a decree for plaintiffs, and defendant appeals.

REVERSED.

For appellant there was a brief over the names of *Mr. Samuel W. Stark* and *Mr. Carlton L. Pepper* with an oral argument by *Mr. Stark.*

For respondents there was a brief and an oral argument by *Mr. E. H. Hartwig.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. The decision of this case turns upon one proposition namely: Does the reservation in the deed from Vauthiers to plaintiffs create a mere personal right in Vauthiers to take water from plaintiffs' ditch, or is the right therein reserved assignable? In other words, is the right reserved in the deed a personal privilege to the grantee, and therefore an easement in gross, or is it for the benefit of the land of the grantee and appurtenant to the land through which the right of way for an irrigation ditch is granted? "An easement is an interest in land created by grant or agreement, express or implied, which confers a right upon the owner thereof to some profit, benefit, dominion, or lawful use out of or over the estate of another." *Huyck* v. *Andrews,* 113 N. Y. 81 (20 N. E. 581: 3 L. R. A. 789: 10 Am. St. Rep. 432). The right to take or divert water from the land of another constitutes an easement. Washburn, Easement (4 ed.) 5, 13, 14, 305, 350. It is conceded by respondents that the reservation in Vauthiers' deed to them created an easement, and, indeed, in view of the authorities, no other conclusion is possible, but they contend that such servitude is only an easement in gross and personal to Vauthier, and therefore unassignable.

2. In determining whether a right granted is appurtenant or in gross, courts must consider the terms of the grant, the nature of the right, and the surrounding circumstances, giving effect, as far as possible, to the legally ascertained intention of the parties, but favoring always the construction of the grant as of an easement, appurtenant rather than of a right in gross. 10 Am. & Eng. Enc. Law (2 ed.) 405; Washburn, Easement (4 ed.) 45; *Stovall* v. *Coggins Granite Co.,* 116 Ga. 376 (42 S. E. 723).

3. And the rule that the rights of parties to a deed must be ascertained from its words is in cases of this

kind subject to the modification that surrounding circumstances may be taken into consideration in order to ascertain the intention of the parties.   Jones, Easement, § 38; Jones, Real Property, § 344.

4. The reservation in the deed of Vauthiers to plaintiff carved a new estate out of that granted, and is therefore to be construed as a regrant or reconveyance of the estate so reserved from plaintiff to Vauthiers.   Washburn, Easement (4 ed.) 34.

5. In this State the term "heirs" is not necessary in a conveyance to convey an estate in fee simple.

6. A conveyance is deemed to be of a fee-simple estate unless the contrary intent appears in express terms or is necessarily implied in the terms of the grant.   Section 7103, L. O. L.

7. With the foregoing elementary propositions in view, we will now consider the effect of the conveyance from Vauthiers to plaintiffs and the subsequent conveyance to defendant.   The reservation in the deed to plaintiffs is to be considered in the same light as though plaintiffs, being the owners of the right of way and ditch, had conveyed to Vauthiers and wife "the right to use water therefrom according to their interest," the extent of which interest will be hereafter considered.   It is evident from a perusal of the section of our code, above cited, that the natural and ordinary construction of the above language would pass to the Vauthiers an inheritable estate, and plaintiffs have the laboring oar to establish the proposition that some other or less estate was intended and this must be done, not *de hors* the deed but from the deed itself.

8. Bearing in mind that the right of way conveyed is expressly declared to be "for the purpose of building, constructing and maintaining an irrigation ditch," and that the consideration is nominal, there is nothing in the deed itself that indicates any intent to convey or reserve any

other or less estate than that which the statute provides it shall convey, namely, an inheritable estate. Further, if, in interpreting the deed, we go beyond its terms, and consider the circumstances surrounding its execution, there is nothing to indicate that there was any reason why the grantor should desire to reserve a less estate than that implied by the statute from the words used. The Vauthiers owned 100 acres of land, crossed by the ditch, which could be profitably utilized only by irrigation. The ditch in question could be used for this purpose, and another ditch would uselessly occupy land valuable for cultivation. The consideration paid was nominal, and the burden imposed upon the land by a 10-foot right of way across it was not inconsiderable. Unless the Vauthiers could use the water from the ditch and transfer that right to others in case of sale of the premises, the additional burden of this right of way would inevitably lessen the selling value of the land upon which it was imposed. They had the land, they had the water with which to irrigate it, and it was only natural that they would desire to retain the right to flow it through the ditch which otherwise they were permitting to be constructed without consideration, so that, viewing the transaction in light of the statute and of the circumstances as well, we conclude that there was reserved by the deed an easement appurtenant to the land. It is evident from the conduct of the parties that such was their construction of the deed at the time and for some time after it was executed. Vauthiers and defendant used water from the ditch without objection from plaintiffs until 1906, and it was only after a difficulty between defendant and the Vauthiers that any suggestion was made that defendant was a trespasser. If the reservation is indefinite in its terms, it may be construed with reference to the acts of the parties in regard to it. Jones, Easement, § 88.

9. It is contended that the reservation is indefinite as

to the extent of the right retained in the grantors, but this is an ambiguity explained by the testimony, and such testimony is competent for that purpose.

10. The meaning of the words "to the extent of their interest" used in the reservation becomes clear in the light of the evidence. Vauthiers owned certain shares in the Mt. Hood Water Supply Company, each share entitling him to take approximately $6\frac{2}{5}$ inches of water from their ditch, and divert it wheresoever he should choose. Practically these shares constituted a water right in the holder to the extent of as many inches of water as they represented. It is a mere juggling with words to say that he owned shares of stock, and not a right to take water. The shares were merely evidence of his right to take so many inches of water from the company's ditch and divert it into a subsidiary ditch of his own. How many shares he owned does not appear from the testimony, but it does appear that he had enough to be able to convey $28\frac{2}{3}$ inches of water or four shares and a fraction of a share of stock to defendant. A fair construction of the reservation means that he should have a right to flow through plaintiffs' ditch and to divert therefrom upon his own land a quantity of water represented by the number of shares of water stock he then held. He could not increase the amount by subsequent purchase of stock after the conveyance.

11. When he sold the land to defendant, it is probable that the amount of water that defendant would have been entitled to use as appurtenant to the land conveyed would have been such quantity as the tract sold bore to the whole tract owned by Vauthiers at the time of the conveyance had not the deed itself limited it to $28\frac{2}{3}$ inches. But, having seen fit to so define the easement granted by assigning the water stock in the same instrument conveying the land, we think a fair construction of the instrument warrants us in holding that defendant is

entitled to flow in such ditch 28⅔ inches of water, and to divert it therefrom upon his land at any place thereon where he may see fit. Vauthiers was not made a party to this proceeding, and we cannot make any decree which will adjust the rights in this ditch between him and the parties to this suit.

From the views herein expressed, it follows that the decree of the circuit court must be reversed, and one entered in conformity with this opinion.    REVERSED.