**Emile JAMAIL et al., Appellants,**

v.

**Barry GILLINGWATER, Trustee,
Appellee.**

No. 13264.

Court of Civil Appeals of Texas,
Austin.

Feb. 18, 1981.

Burrell D. Johnston, Austin, for appellants.

Milton L. Bankston and J. Stockton Williams, Jr., Stubbeman, McRae, Sealy, Laughlin & Browder, Austin, for appellee.

PHILLIPS, Chief Judge.

This is a suit to enjoin the threatened foreclosure of an apartment complex. Trial was to a jury which found all issues favorable to appellee. The court then entered judgment on the verdict granting the injunction sought. Appellants have perfected their appeal to this Court.

We affirm.

Appellants are before us on two principal questions: first, whether the trial court abused its discretion in granting the injunction and second, whether the injunction is broader than the relief sought.

The facts necessary to the disposition of this appeal are as follows: Appellee Gillingwater is the owner of the El Posado Apartments and personal property that is the subject matter of this suit. The apartments were conveyed to him in April, 1976, by deed from El Posado Properties, Ltd. At the time of the conveyance to appellee, the property was incumbered by two deeds of trust; one, a deed of trust executed by appellant Jamail to a trustee for Lamar Savings; the other, a deed of trust executed by El Posado Properties, Ltd., to a trustee for appellant Jamail. Both required Jamail's written consent to any conveyance of the property. They also required that the owner under the deeds keep the premises in good condition, pay the taxes, maintain insurance and make certain accountings. Appellee had already been in possession and control of the apartments in question for eleven months prior to the April, 1976 conveyance, by virtue of an oral agreement with appellant. Appellee had acted as manager of the apartments prior to May, 1975.

All payments after May, 1975, on the notes secured by the two deeds of trust were made by appellee with no reimbursement; he lost money on the project and paid all expenses such as plumbing, heating, air conditioning, and painting. He expended a great amount of time, energy and effort on the project under the assumption that he had purchased the property.

In May, 1976, appellee attempted to obtain Jamail's written consent to the conveyance by El Posado Properties, Ltd., but Jamail refused. Appellee then received a letter from Jamail's attorney notifying him of an alleged default and threatening foreclosure. Appellee filed this suit to halt the foreclosure.

The jury found that Jamail was estopped to deny his consent to the conveyance of the property from El Posado Properties, Ltd., to appellee; and that he was further estopped on May 25, 1976, from asserting the requirements of the deed of trust and note held by him. The jury also found that Jamail consented to the conveyance to appellee, and was unreasonable in withholding his written consent allowing appellee to purchase the apartments. Finally, the jury found that Jamail waived the requirements of the note held by him, and that appellee kept the improvements on the property in good repair and condition.

Jamail maintains that the trial court abused its discretion in granting the injunction. He argues that there is no testimony or other evidence presented to the trial court to show the lack of an adequate remedy at law or any danger of irreparable injury to appellee.[1] We cannot agree with appellants' position.

■ The record before us clearly shows that appellee expended a great amount of time, effort and money into the project; all payments after May, 1975, were made by him alone; that his efforts turned the project from a money-loser to a profit-maker; from a project in need of repairs to a project in excellent condition. This transition was entirely due to appellee's efforts, and to no one else's. His testimony was uncontradicted that his possession of the property, plus all his efforts, energies, and money would be forever lost if Jamail foreclosed.

■ Appellant counters the above with an assertion that there is no evidence to indicate that appellant is insolvent or that money damages at law are unavailable. Even so, the law in this state is well established that where the applicant for injunction "shows a clear right to be left in the undisturbed possession of *certain property*, and that such right is about to be invaded without semblance of right by another, such

---

**1.** Appellants cite: *Lewis v. Clark*, 129 S.W.2d 421 (Tex.Civ.App.1939), writ dism'd jdgmt cor.; *Hill v. Brown*, 237 S.W. 252 (Tex.Comm'n App. 1922); *King v. Miller*, 280 S.W.2d 331 (Tex.Civ. App.—Eastland 1955, writ ref'd n. r. e.); and others.

invasion, on principle, should be prevented in its incipiency by injunction instead of allowing the injury to be inflicted, and then leaving the party to his legally adequate, but in fact generally very inadequate, remedy of an action for damages." (Emphasis added). *Sumner v. Crawford*, 91 Tex. 29, 41 S.W. 994, 995 (1897).

Texas Rev.Civ.Stat.Ann. art. 4642, § 1 (1952) states that where the applicant is entitled to the relief demanded and such relief or any part thereof requires the restraint of some act prejudicial to him, then the trial court may grant an injunction. Section 4 of art. 4642 specifically provides that where irreparable injury to real or personal property is threatened, an injunction may be granted irrespective of any legal remedy at law. See *Hale County v. Davis*, 572 S.W.2d 63 (Tex.Civ.App.1978, writ ref'd n. r. e.).

The cases cited by appellants are distinguishable in that they deal with chattels instead of with real property as we have here.

Appellants' second point is also without merit. The injunction prohibited any sale, attempted sale or attempted foreclosure of appellants' lien based on events occurring prior to March 9, 1978, the date the trial ended. The injunction further proscribes any interference with appellee's possession and use of the premises. It is this last provision that appellants maintain is without limit or qualification. In our judgment, the questioned provision clearly relates to any interference based upon events occurring prior to March 9, 1978.

The judgment of the trial court is in all things affirmed.